Justin Cilenti, Esq.
Peter Hans Cooper, Esq.
CILENTI & COOPER, PLLC
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
pcooper@jcpclaw.com
*Attorneys for Plaintiffs,*
*Collective Action Members,*
*and the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KEVIN ORLANDO OLAYA, ROSA NUBIA PERILLA, and JHOYNNER SEBASTIAN OLAYA, on behalf of themselves, and others similarly situated,

Plaintiffs,

-against-

LE GENERAL SERVICES, INC., NATIONAL GENERAL SERVICES CORP., EXCEL CLEANING NY LLC, GOOD SAMARITAN HOSPITAL MEDICAL CENTER, and ANGEL F. CARDENAS, individually,

Defendants.

Case No.: 26 cv 7203

**COLLECTIVE ACTION COMPLAINT and CLASS ACTION**

Jury Trial Demand

ECF Case

---

Plaintiffs, Kevin Orlando Olaya, Rosa Nubia Perilla, and Jhoynner Sebastian Olaya, (collectively, "Plaintiffs"), on behalf of themselves, and others similarly situated, by and through their undersigned attorneys, Cilenti & Cooper, PLLC, respectfully file this Collective Action Complaint and Class Action against Defendants, Le General Services, Inc.; National General Services Corp.; Excel Cleaning NY LLC; and Good Samaritan Hospital Medical Center ("Good Samaritan Hospital"); and Angel F. Cardenas, individually (all defendants collectively referred to herein as the "Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), they are entitled to recover from the Defendants: (1) unpaid wages, minimum wages, and overtime compensation; (2) liquidated damages; (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from the Defendants: (1) unpaid wages, minimum wages, and overtime compensation; (2) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (3) compensatory and/or liquidated damages for untimely payment of wages; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 201 et seq. ("FLSA"), 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and, 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the conduct making up the basis of the complaint took place in this judicial district.

## THE PARTIES

***THE PLAINTIFFS***

5. Plaintiffs are adult residents of Madison, Wisconsin.

6. Plaintiffs are former employees of "Good Samaritan Hospital" and its staffing companies, named herein.

7. Plaintiffs worked for Good Samaritan Hospital, and for purported staffing companies which provided cleaning personnel to Good Samaritan Hospital.

8. Plaintiff Kevin Orlando Olaya worked at Good Samaritan Hospital, beginning on or about March 28, 2022, and ending on or about July 20, 2026, except for the period between April 9, 2024 and July 2025, when he did not work due to an injury.

9. Plaintiff Rosa Nubia Perilla worked at Good Samaritan Hospital, beginning on or about March 28, 2022, through September 16, 2026, without interruption.

10. Plaintiff Jhoynner Sebastian Olaya worked at Good Samaritan Hospital, beginning on or about October 2022, through September 15, 2026, without interruption.

11. Plaintiffs herein were paid by corporate entities Le General Services Inc. and Excel Cleaning NY LLC, but at all times relevant to this action worked directly for and at the premises of, Good Samaritan Hospital, at 1000 Montauk Highway, West Islip, New York 11795.

12. Plaintiffs were supervised by persons in charge of cleaning services at Good Samaritan Hospital.

13. Plaintiffs reported to supervisors at Good Samaritan Hospital and its staffing agency, Le General Services, owned and operated by Angel F. Cardenas.

14. At times relevant to this action Defendants used multiple corporate entities to avoid payment of overtime premium pay to Plaintiffs and other similarly situated employees.

***THE DEFENDANTS***

15. At relevant times, Defendant, Le General Services, Inc., was and is a domestic business entity organized and existing under the laws of the State of New York, with a corporate address at 333 Skidmore Road, Deer Park, New York 11729.

16. At relevant times, Defendant, National General Services Corp., was and is a domestic business entity organized and existing under the laws of the State of New York, with a corporate address at 333 Skidmore Road, Deer Park, New York 11729.

17. At relevant times, Defendant, Excel Cleaning NY LLC, was and is a domestic business entity organized and existing under the laws of the State of New York, with a corporate address at 333 Skidmore Road, Deer Park, New York 11729.

18. At relevant times, Defendant, Good Samaritan Hospital, was and is a duly licensed Hospital, in accordance with Article 28 of the New York Public Health Law, and is engaged in the business of providing health care services at its facility located at 1000 Montauk Highway, West Islip, New York.

19. Defendant Angel F. Cardenas has been and is an owner, shareholder, officer, director, supervisor, and/or managing agent, of the corporate defendants, Le General Services, Inc.; National General Services Corp.; and Excel Cleaning NY LLC, who actively participated, and continues to participate in the day-to-day operations of the corporations, and acted intentionally and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Le General Services, Inc.; National General Services Corp.; and Excel Cleaning NY LLC.

20. The individual defendant Angel F. Cardenas, exercised control over the terms and conditions of Plaintiffs' employment in that has and has had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, including Plaintiffs, and (v) otherwise affect the quality of his employees' employment.

21. At all times relevant to this action, Defendant Angel F. Cardenas, created and implemented crucial business policies, including decisions concerning the number of hours the

employees were required to work, the amount of pay that the employees were entitled to receive, and the method and manner by which the employees were to be paid.

22. Defendant Angel F. Cardenas exercised sufficient control over Le General Services, Inc.; National General Services Corp.; and Excel Cleaning NY LLC's day-to-day operations as to be considered an employer of the Plaintiffs, under the FLSA and New York Labor Law.

23. Upon information and belief, at all times relevant to the allegations in this Complaint, the corporate defendants, were, and continues to be, "enterprises engaged in commerce" within the meaning of the FLSA in that they (i) have and have had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have had an annual gross volume of sales of not less than $500,000.

24. At all relevant times, Le General Services, Inc.; National General Services Corp.; Excel Cleaning NY LLC were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA.

25. At all relevant times, Good Samaritan Hospital was and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

26. Defendants employed Plaintiffs in Suffolk County, New York, cleaners and manual workers.

27. The work performed by Plaintiffs was directly essential to healthcare services and hospital operations as well as the labor and staffing companies operated by the corporate and individual Defendants.

28. At relevant times, upon information and belief, and during the course of Plaintiffs' employment, the Defendants failed to maintain accurate and sufficient time records.

29. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs, and dozens of other employees similarly situated, lawfully earned wages, minimum wages, and overtime compensation, in contravention of the FLSA and New York Labor Law.

30. Although Le General Services, Inc.; National General Services Corp.; Excel Cleaning NY LLC are separate and distinct business entities, they engage in related activities, namely, providing personnel to Good Samaritan Hospital in West Islip, New York. The corporations shared Plaintiffs, as well as other employees, acted in the interest of each other with respect to employees, paid their employees by the same method, shared control over their employees, and are themselves under common control and management.

31. The corporations Le General Services, Inc.; National General Services Corp.; Excel Cleaning NY LLC are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provides mutually supportive services to the substantial advantage of the other, such that each entity may be treated as a single enterprise and/or joint employer.

32. The performance of Plaintiffs' job responsibilities, as well as the responsibilities of other similarly situated employees, was and continues to be controlled by one person or group of persons, corporations, or other organizational units acting together.

33. The corporate defendants share a common commercial business purpose, namely, operating a large health care facility in West Islip, New York.

34. Upon information and belief, an arrangement existed between the corporate defendants whereby such entities agreed to share the services of Plaintiffs and other employees.

35. Upon information and belief, the corporate defendants shared control of Plaintiffs, and supervised and controlled their work on a day-to-day basis.

## STATEMENT OF FACTS

### a. Plaintiff Kevin Orlando Olaya

36. Plaintiff Kevin Orlando Olaya, was employed by Defendants in Suffolk County, New York, as a cleaning person at Defendants' Hospital facility known as "Good Samaritan", beginning on March 28, 2022 and ending on July 20, 2026, with the exception of April 9, 2024 through July 2025, when he did not work due to an injury.

37. Plaintiff Kevin Orlando Olaya was a cleaner at Good Samaritan Hospital and his daily tasks were assigned by and according to the needs of the hospital, which instructed him on the work to be performed, and how to perform it, and could terminate his employment if he did not follow proper cleaning protocols and procedures.

38. During his employment, Plaintiff Kevin Orlando Olaya worked over forty (40) hours per week.

39. Throughout his employment, Plaintiff Kevin Orlando Olaya typically worked a shift of eight hours (10:00 p.m. until 6:00 a.m.), seven (7) nights per week, for a total of fifty-six (56) hours per week. He worked three hundred sixty-five (365) nights per year, with few exceptions.

40. During his employment, Plaintiff Kevin Orlando Olaya did not punch a time clock. His hours were kept by a person named Donaldo.

41. During his employment, Plaintiff Kevin Orlando Olaya was paid by two (2) separate entities each pay period, namely, Le General Services and Excel Cleaning NY. This year, the system was changed and he received one check. He always worked for Good Samaritan

Hospital, was directly supervised by Good Samaritan Hospital personnel, and was instructed as to his hours and duties by Good Samaritan Hospital staff.

42. Throughout his employment, Plaintiff Kevin Orlando Olaya was paid at minimum wage, without overtime compensation. At times, he was paid by multiple checks to avoid paying overtime compensation.

43. Plaintiff Kevin Orlando Olaya was a manual worker as that term is used in the New York Labor Law and implementing regulations.

44. Plaintiff Kevin Orlando Olaya was paid twice per month, not weekly.

45. Plaintiff Kevin Orlando Olaya was not paid for all hours worked.

**b. Plaintiff Rosa Nubia Perilla**

46. Plaintiff, Rosa Nubia Perilla, was employed by Defendants in Suffolk County, New York, as a cleaning person at Defendants' Hospital facility known as "Good Samaritan", beginning on or about March 28, 2022, and ending on September 16, 2026, without interruption.

47. Plaintiff Rosa Nubia Perilla was a cleaner at Good Samaritan Hospital and her daily tasks were assigned by and according to the needs of the hospital, which instructed her on the work to be performed, and how to perform it, and could terminate her employment if she did not follow proper cleaning protocols and procedures.

48. During her employment, Plaintiff Rosa Nubia Perilla worked over forty (40) hours per week.

49. Throughout her employment, Plaintiff Rosa Nubia Perilla typically worked a shift of eight hours (10:00 p.m. until 6:00 a.m.), seven (7) nights per week, for a total of fifty-six (56) hours per week. She worked three hundred sixty-five (365) nights per year, with few exceptions.

50. During her employment, Plaintiff Rosa Nubia Perilla did not punch a time clock. Her hours were kept by a person named Donaldo who was present in the hospital each night.

51. During her employment, Plaintiff Rosa Nubia Perilla was paid by two (2) separate entities each pay period, namely, Le General Services and Excel Cleaning NY. This year, the payment system was changed and she received one check. She always worked for Good Samaritan Hospital, was directly supervised by Good Samaritan Hospital personnel, and was instructed as to her hours and duties by Good Samaritan Hospital staff.

52. Throughout her employment, Plaintiff Rosa Nubia Perilla was paid at minimum wage, without overtime compensation. At times, she was paid by multiple checks to avoid paying overtime compensation.

53. Plaintiff Rosa Nubia Perilla was a manual worker as that term is used in the New York Labor Law and implementing regulations.

54. Plaintiff Rosa Nubia Perilla was paid twice per month, not weekly.

55. Plaintiff Rosa Nubia Perilla was not paid for all hours worked.

**c. Plaintiff Jhoynner Sebastian Olaya**

56. Plaintiff, Jhoynner Sebastian Olaya, was employed by Defendants in Suffolk County, New York, as a cleaning person at Defendants' Hospital facility known as "Good Samaritan", beginning in October 2022 and ending on September 15, 2026, without interruption.

57. Plaintiff Jhoynner Sebastian Olaya was a cleaner at Good Samaritan Hospital and his daily tasks were assigned by and according to the needs of the hospital, which instructed him on the work to be performed, and how to perform it, and could terminate his employment if he did not follow proper cleaning protocols and procedures.

58. During his employment, Plaintiff Jhoynner Sebastian Olaya worked over forty (40) hours per week.

59. Throughout his employment, Plaintiff Jhoynner Sebastian Olaya typically worked a shift of eight hours (10:00 p.m. until 6:00 a.m.), seven (7) nights per week, for a total of fifty-

six (56) hours per week. He worked three hundred sixty-five (365) nights per year, with few exceptions.

60. During his employment, Plaintiff Jhoynner Sebastian Olaya did not punch a time clock. His hours were kept by a person named Donaldo.

61. At times relevant to this action and during his employment, Plaintiff Jhoynner Sebastian Olaya was paid by two (2) separate entities each pay period, namely, Le General Services and Excel Cleaning NY. This year, the system was changed and he received one check. He always worked for Good Samaritan Hospital, was directly supervised by Good Samaritan Hospital personnel, and was instructed as to his hours and duties by Good Samaritan Hospital staff.

62. Throughout his employment, Plaintiff Jhoynner Sebastian Olaya was paid at minimum wage, without overtime compensation. At times, he was paid by multiple checks to avoid paying overtime compensation.

63. Plaintiff Jhoynner Sebastian Olaya was a manual worker as that term is used in the New York Labor Law and implementing regulations.

64. Plaintiff Jhoynner Sebastian Olaya was paid twice per month, not weekly.

65. Plaintiff Jhoynner Sebastian Olaya was not paid for all hours worked.

66. Plaintiffs worked directly for the corporate and individual Defendants.

67. Plaintiffs and others similarly situated, were paid twice per month, and they were not paid an overtime premium, as required by Federal and State law.

68. Defendants Le General Services, Inc.; National General Services Corp.; Excel Cleaning NY LLC; and Angel F. Cardenas were named defendants in a similar case involving food preparation workers provided as staff to a large food manufacturing facility in Suffolk

County and have been on notice that their pay practices were noncompliant and illegal since the case was filed in January 2024. *See*, *Quintero et. al. v. Le General Services, Inc.*, Civ. Case No.: 24 Civ. 451 (EDNY 2024), but did not correct the payment system.

69. Plaintiffs were not provided with true and accurate wage statements, detailing their hours worked, hourly rate of pay, the basis for their compensation, itemizing any withholdings, and setting forth their net pay.

70. Plaintiffs were not given a receipt or wage statement with their compensation.

71. Plaintiffs were not tipped workers.

72. At all relevant times, the Defendants knowingly and willfully operated their business with a policy of not paying the FLSA overtime rate (of time and one-half) or the New York State minimum wage or overtime rate (of time and one-half) to Plaintiffs for work performed over forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

73. Plaintiffs bring this action individually and as representatives on behalf of themselves and all other current and former non-exempt employees who have been or were employed by Defendants for three (3) years prior to filing the complaint, to the entry of judgment in this case (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage for hours worked, and/or at rates less than time and one-half the statutory minimum wage for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

74. Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than fifty (50) Collective

Action Members who worked for the Defendants during any given time, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

75. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

76. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

77. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, since the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

78. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have

acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Plaintiffs and Collective Action Members within the meaning of the FLSA;

b. Whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether the Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA in an area where Plaintiffs were employed, in violation of C.F.R. § 516.4;

e. Whether the Defendants failed to pay the Plaintiffs and the Collective Action Members statutory minimum wages;

f. Whether the Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

g. Whether the Defendants failed to create and maintain adequate records of the pay received by Plaintiffs and the Collective Action Members in violation of federal and state law;

h. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

i. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

79. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

80. Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

81. Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

82. Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendant at any time since November 2020 to the entry of judgment in this case (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid overtime compensation in violation of the New York Labor Law (the "Class").

83. Upon information and belief, the persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendant, the class consists of hundreds of current and former employees, and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

84. The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy,

particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

85. The Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

86. Plaintiffs have committed himself to pursuing this action and have retained counsel experienced in employment law and class action litigation.

87. Plaintiffs will fairly and adequately protect the interests of the NY Class Members. Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

88. Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members. Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and further understand that they may be called upon to testify in depositions and at trial.

89. Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

90. There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a. Whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b. Whether Defendant failed to pay overtime compensation for hours worked more than forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

c. Whether Defendant's violations of the New York Labor Law were willful as that term is used in the context of the New York Labor Law;

d. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, statutory, interests, costs, disbursements, and attorneys' fees.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

91. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

92. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

93. At all relevant times, Defendants employed Plaintiffs and other similarly situated employees, within the meaning of the FLSA.

94. Upon information and belief, at all relevant times, each corporate defendant Defendants, had gross revenues in excess of $500,000.

95. Plaintiffs and other similarly situated employees worked hours for which they were not paid any wages.

96. Plaintiffs and collective action members were entitled to be paid at the rate of time and one-half the applicable minimum wage, or their regular rate of pay when higher than the applicable minimum wage, for hours worked in excess of forty (40) each workweek.

97. The Defendants failed to pay Plaintiffs and other similarly situated employees' wages for all hours worked, minimum wages, and overtime compensation, at all relevant times, in the lawful amount for all hours worked.

98. At all relevant times, the Defendants had, and continue to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and other similarly situated employees for all hours worked in excess of forty (40) hours per work week, which violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

99. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and other similarly situated employees at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime pay would financially injure Plaintiffs.

100. The Defendants have failed to make, keep and preserve accurate records with respect to Plaintiffs and other employees, sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA, 29 U.S.A. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

101. Records concerning the number of hours worked by Plaintiffs and the actual compensation paid to Plaintiffs may be false or inaccurate.

102. Defendants failed to properly disclose or apprise Plaintiffs and collective action members of their rights under the FLSA.

103. As a direct and proximate result of Defendants' disregard of the FLSA, Plaintiffs and collective action members are entitled to liquidated damages pursuant to the FLSA.

104. Due to the unlawful acts of the Defendants, Plaintiffs and collective action members suffered damages in an amount not presently ascertainable of unpaid minimum wages and overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

105. Plaintiffs and collective action members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**[Violation of the New York Labor Law]**

106. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "105" of this Complaint as if fully set forth herein.

107. At all relevant times Plaintiffs, collective action members and the class, were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

108. Defendants knowingly and willfully violated Plaintiffs', collective action members' and the class' rights by failing to pay minimum wages in the lawful amount for all hours worked.

109. The corporate and individual Defendants knowingly and willfully violated Plaintiffs, collective action members and the class' rights by failing to pay overtime compensation at rates of not less than one and one-half times the statutory minimum rate of pay, for each hour worked in excess of forty (40) hours in a workweek.

110. Due to the Defendants' New York Labor Law violations, Plaintiffs, collective action members, and the class, are entitled to recover from Defendants unpaid minimum wages; unpaid overtime wages; reasonable attorneys' fees, and costs and disbursements of this action,

pursuant to New York Labor Law § 663(1) *et al.* and § 198. Plaintiffs, collective action members and the class, also seek liquidated damages pursuant to New York Labor Law § 663(1).

**COUNT III**
**[Statutory Penalties Pursuant to the New York State Wage Theft Prevention Act]**

111. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "110" of this Complaint as if fully set forth herein.

112. The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, among other things, of the employee's rate of pay and regular pay day.

113. The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

114. Defendants did not provide Plaintiffs, collective action members, and the class with accurate written statement properly accounting for their actual hours worked, and setting forth their true hourly rate of pay, regular wages, and/or overtime wages.

115. Upon information and belief, Defendants' record keeping practices were intended to, and did in fact, disguise the actual number of hours the employees worked, in order to avoid paying them for their full hours worked; and, overtime due.

116. Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate timesheets and payroll records.

117. Plaintiffs were not provided with true and accurate wage statements as required by law.

118. Federal and State record keeping requirements place the burden on the employer to keep track of its employees' working hours.

119. Because plaintiffs often stayed later than their scheduled shift, and without adequate contemporaneous time records and accurate weekly wage statements, Plaintiffs will not recover the full amount of wages owed, thereby constituting a significant and concrete injury.

120. Defendants' failure to provide an accurate annual wage notice entitles Plaintiff to statutory damages of fifty dollars ($50.00) per week for each work week the violation continued to occur, to a maximum of five thousand dollars ($5,000). New York Labor Law § 198(1-b).

121. Defendants' failure to provide a weekly wage statement entitles Plaintiff to statutory damaged in the amount of two hundred fifty dollars ($250.00) for each work day the violation occurred, to a maximum of five thousand dollars ($5,000). New York Labor Law §§195(1)(a), (3); 198 (1-d).

122. Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act, and as such, are liable for civil penalties, attorneys' fees, and costs.

**COUNT IV**

**[Violation of New York Labor Law – Failure to Pay Timely Wages]**

123. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "122" of this Complaint as if fully set forth herein.

124. The timely payment of wages provision of New York Labor Law § 191 and its supporting regulations apply to Defendants and protect Plaintiffs from untimely payment of wages.

125. Defendants are each an employer within the meaning of New York Labor Law §§ 190 and 651.

126. Plaintiffs are "manual workers" within the meaning of New York Labor Law § 190(4).

127. As manual workers, Defendants were required to pay plaintiffs "not later than seven days after the end of the week in which the wages are earned" as required by New York Labor Law § 191(1)(a)(i).

128. With Defendants paying Plaintiffs twice monthly, Defendants did not pay Plaintiffs for the first seven (7) days they worked during each pay period within seven (7) days after the end of the week in which the wages were earned. Plaintiffs did not agree to be paid long after each pay period.

129. Defendants failed to pay on a timely basis as required by New York Labor Law § 191(1)(a).

130. Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest as provided for by New York Labor Law § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and similarly situated collective action members, and the Class, respectfully request that this Court grant the following relief:

(a) An award of unpaid wages, minimum wages, and overtime due under the FLSA and New York Labor Law;

(b) An award of statutory damages for failure to provide wage notices and wage statements, pursuant to the New York State Wage Theft Prevention Act;

(c) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(d) An award of prejudgment and post-judgment interest;

(e) An award of costs and expenses associated with this action, together with reasonable attorneys' fees;

(f) Such other further and different relief as this Court determines to be just and proper under the circumstances.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues.

Dated: New York, New York
November 9, 2026

Respectfully submitted,

CILENTI & COOPER, PLLC
**Counsel for Plaintiffs**
60 East 42nd Street – 40th Floor
New York, NY 10165
Telephone (212) 209-3933
Facsimile (212) 209-7102
pcooper@jcpclaw.com

By: ______________________________
Peter Hans Cooper (PHC 4714)

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, **Kevin Olaya**, am an employee currently or formerly employed by **Le General, Excel Cleaning and Good Samaritan**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
October 16, 2026

Kevin Orlando Olaya Pevilla

Kevin Olaya

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, **Rosa Nubia Perilla Guitierrez**, am an employee currently or formerly employed by **Le General, Excel Cleaning and Good Samaritan**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
October 23, 2026

Rosa Nubia Perilla Gutierrez

Rosa Nubia Perilla Guitierrez

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, **Sebastian Olaya**, am an employee currently or formerly employed by **Le General, Excel Cleaning and Good Samaritan**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
October 16, 2026

Jhoynner Sebastian Olaya Pinilla

Sebastian Olaya